### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| MARK A. GROSS and | * | |
| MARIA E. GROSS, | * | |
| Debtors | * | |
| | * | Case No. 1-04-bk-06498 |
| OFFICE OF THE UNITED | * | |
| STATES TRUSTEE, | * | |
| Movant | * | |
| | * | CHAPTER 7 |
| v. | * | |
| | * | |
| MARK A. GROSS and | * | |
| MARIA E. GROSS, | * | |
| Respondent | * | |

## OPINION

This matter is before the Court on the Motion of the United States Trustee (the "UST") to

dismiss the within case for substantial abuse under 11 U.S.C. §707(b).  The UST argues that the

case should be dismissed because Mark and Maria Gross ("Debtors") have sufficient disposable

income with which to pay a significant portion of their debts.

Debtors' bankruptcy petition was filed on October 29, 2004.  The UST filed the instant

motion on March 23, 2005 to which Debtors filed an Answer on March 31, 2005. On June 27,

2005, an evidentiary hearing was held at which Mark Gross ("Gross") was the sole witness.  The

parties agreed to dispense with the filing of briefs.  The matter is now ready for decision .[1]

---

[1]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334.  This
matter is core pursuant to 28 U.S.C. §157(b)(2)(A).  This Opinion and Order constitutes findings
of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure
("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

**Findings of Fact**

Until August 2003, Debtors lived in Columbia, Maryland where they rented an apartment for approximately $1200.00 per month.[2] Desiring to own a house and anticipating that their other living expenses would be lower in Pennsylvania, Debtors purchased a home in York County in August, 2003 for approximately $208,000.00. Debtors lacked sufficient funds for a down payment, so Gross's parents gave Debtors the $6,500 required to close the sale. When they filed their petition, Debtors resided in the home with Gross's son from a prior marriage, who is thirteen years of age. In 2004, Debtors refinanced their mortgage loan to obtain a lower interest rate and used $2,000.00 in cash generated by the refinancing to pay down credit card debt. Since the refinancing, Debtors' monthly mortgage payment has been $2050.00 per month, slightly higher than the amount of their payment prior to refinancing. At the time Debtors purchased the home, they were carrying approximately $30,000.00 to $40,000.00 in credit card debt. Gross testified that he had attempted to find rental housing at a lower cost at "half a dozen places" but was denied due to Debtors' poor credit score.

Gross is employed by Verizon in Baltimore, Maryland, and Maria Gross is employed part-time as a sales person at a vineyard and winery in York County. When they moved to Pennsylvania in 2003, Gross's commute to work lengthened significantly, and the attendant transportation expenses increased. Approximately seven years ago Gross went on military disability and remained unemployed for two years. During that time he earned a college degree and has been employed by Verizon for approximately five years. Gross testified that it was

---

[2]Gross testified that the monthly rent for the apartment in Maryland was "almost 1150, almost 1200."

2

Case 1:04-bk-06498-MDF    Doc 18    Filed 10/13/05    Entered 10/13/05 16:05:22    Desc
Main Document    Page 2 of 8

during this period of unemployment that he began to acquire significant credit card debt.  Gross receives $6292.00 in monthly wages from Verizon and military disability payments of $987.00 per month. Maria's gross earnings are $475.15 per month.  According to their statement of financial affairs, Debtors combined earned and disability income in 2003 was $87,887.00 and $82,726.00 in 2002.  At the time of the hearing their combined net monthly income was $5,984.77.

Gross also has a seventeen-year-old son who resides with Gross's ex-wife in Florida. Gross is subject to a court order to pay child support in the monthly amount of $240.00 for his older child.  On Schedule J, Debtors reported expenses of $440.25 for child support, which included the court-ordered amount and an additional estimated expense of $200.00 per month for travel and other expenses related to the older son's summer visits.

In November 2003, Debtors purchased a 2004 Toyota Matrix with monthly payments of $470.00. Immediately before filing his petition, Gross traded in the Matrix for a Volkswagon Passat.  Payments on the Passat are budgeted at $522.00 per month.  According to Gross, he traded in the smaller and less expensive vehicle because it was uncomfortable due to his disability and long commute. Gross testified that he has tried to reduce his expenses by working more from home to save on fuel expenses.  Even with this reduction in travel, he estimates that he a drives approximately 18,000 to 20,000 miles per year.

Since the filing of the bankruptcy petition, Gross has made voluntary contributions to his 401(k) retirement plan of $373.00 per month. Prior to filing, Gross was only contributing $58.07

3

per month toward his 401k.[3]  He has taken no steps to reduce or eliminate the deduction.

Debtors also budget for a payment of $200.00 per month to Maria Gross's mother, who lives in

Panama, although the actual payments made during 2004 averaged only $107.50 per month.

**Discussion**

Section 707(b) of the Bankruptcy Code provides as follows:

> [T]he court . . .  may dismiss a [Chapter 7] case  . . . if it finds that the granting of relief
> would be a substantial abuse of the provisions of this chapter.  There shall be a
> presumption in favor of granting the relief requested by the debtor.

11 U.S.C. §707(b).

The Bankruptcy Code does not define the term "substantial abuse."  Thus, whether such

abuse exists in a case is largely left to the discretion of the courts.  *In re Miller,* 302 B.R. 495

(Bankr. M.D. Pa. 2003)(citing  *In re Bacco*, 160 B.R. 283, 288 (Bankr. W.D. Pa. 1993)).

"Section 707(b) has always been intended, at least in part, to balance the interests of a debtor

who cannot pay his debts as they come due against a creditor's interest in obtaining repayment of

at least a portion of the debts if such repayment would not be a burden." Ann Morales Olazabal,

*Consumer Bankruptcy Reform and 11 U.S.C. § 707(b): A Case-based Analysis*, 12 B.U. Pub. Int.

L. J. 317, 326-27 (2003).

Several tests have been developed by the courts of appeal to identify substantial abuse,

but the Third Circuit has not addressed the issue. As I discussed in *Miller,* this Court  employs

the "hybrid approach" to the totality of circumstances test developed by the Sixth Circuit in *In re*

*Krohn,* 886 F.2d 123, 126 (6th Cir. 1988). *Krohn* holds that a case may be dismissed solely

---

[3]Gross testified that he had prepared paperwork to increase his 401k contribution prior to
filing bankruptcy in anticipation of receiving a pay raise.

4

because the debtor has the means to repay his debts, but does not mandate dismissal on this

factor alone. *Krohn,* 886 F.2d at 127. The hybrid approach permits the widest latitude to take

into account all of the evidence in a case, but it also allows a court to recognize that "[a] vast

majority of both courts and commentators have opined that a debtor's ability to pay is the *sine*

*qua non* of section 707(b)." *In re Attanasio*, 218 B.R. 180 (Bankr. N.D. Ala. 1998) (collecting

cases). In addition to the ability to pay, factors considered in *Krohn* included:

> whether [a debtor] has engaged in 'eve of bankruptcy purchases,' ... whether ... [he]
> enjoys a stable source of future income, whether he is eligible for adjustment of his debts
> through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the
> potential to ease his financial predicament, the degree of relief obtainable through private
> negotiations, and whether his expenses can be reduced significantly without depriving
> him of adequate food, clothing, shelter and other necessities.

*Krohn*, 886 F.2d at 126. Other factors considered in an analysis of the totality of the

circumstances include:

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity,
> disability, or unemployment;
> (2) whether debtor made consumer purchases far in excess of his ability to repay;
> . . . .
> (4) whether debtor's schedules and statements of current income and expenditures
> reasonably and accurately reflect debtor's true financial condition; and
> (5) whether the bankruptcy petition was filed in bad faith.

*In re Green,* 934 F.2d 568, 572 (4th Cir. 1991))*, In re Lacrosse*, 244 B.R. 583 (Bankr. M.D. Pa.

1999).

The ability of a debtor to pay his debts may be determined by examining whether there

would be sufficient disposable income to fund a Chapter 13 plan. *In re Behlke*, 358 F.3d 429,

435 (6th Cir. 2004). To determine whether a debtor has disposable income, the court must

compare the debtor's future income to his future necessary expenses. *Green*, 934 F.2d at 572;

*Krohn*, 886 F.2d at 126. If the court determines that a debtor has disposable income, it must then

5

determine whether debtor can: (1) repay a significant amount of unsecured debt or (2) repay a significant percentage of unsecured debt regardless of the amount. By considering both the percentage and the total amount of unsecured debt that can be repaid, the court neither penalizes debtors who avoid amassing significant debt immediately prior to filing nor rewards those who do. *Miller,* 302 B.R. at 500.

Applying the totality of the circumstances factors, I find that granting Debtors relief would constitute substantial abuse of Chapter 7. Debtors' petition was not filed because of sudden illness, calamity, disability or unemployment. Gross amassed significant credit card debt while he was unemployed five to seven years ago, but his employment and income were stable for at least two years prior to filing of the petition. Debtors recognized that they had financial problems in 2003, but they nevertheless decided to leave their apartment in Columbia, Maryland, where Gross had a relatively short commute, to purchase a home in Pennsylvania. By making this move, they almost doubled their housing costs and substantially increased their transportation costs. Immediately before they filed, Debtors surrendered a Toyota Matrix, which they had purchased within the year, replacing it with a Volkswagon Passat at increased monthly payments of approximately $50.00 per month.[4]     Although they were unable to pay their creditors, Gross elected to increase his 401(k) deduction shortly before filing for bankruptcy because he expected to receive a raise. Debtors did not live an extravagant lifestyle prior to filing their petition, but neither did they engage in any significant belt-tightening.

At the hearing, the UST argued that Debtors' budget included several items that could be

---

[4]The Court accepts Gross's explanation that he needed to obtain a larger vehicle because of his back problems, but he apparently did not make any effort to purchase or lease a less expensive vehicle.

6

reduced or eliminated without depriving them of food, clothing, housing and other necessities. The current mortgage payment consumes over one-third of their monthly net income. Although Gross's testimony supports a finding that alternative housing is not readily available, the Court is not convinced that suitable alternatives are nonexistent. However, the UST presented no evidence to rebut Gross's testimony that he was unable to find a lessor willing to provide Debtors with alternative housing at a lower cost. Therefore, it would be inappropriate for the Court to determine that Debtors' housing expense is unreasonable based upon the UST's bald assertion that monthly mortgage payments in excess of $2,000.00 are outside the norm.

However, the UST challenged several expenditures that clearly are inappropriate. Debtors have sent an average of $107.50 per month to Maria Gross's mother as part of an agreement with Maria Gross's sister to provide assistance to their mother. The willingness of a couple to provide financial support to a family member would be commendable in other circumstances, but the burden of such demonstrations of largess should not be borne by the couple's creditors. Similarly, under current law, Debtors' contribution of $373.00 per month to his 401(k) plan is not regarded as a reasonable expense. *In re Anes*, 195 F.3d 177, 180-181 (3rd Cir. 1999) (Voluntary contributions to retirement plans are not reasonably necessary for a debtor's maintenance or support.)

Gross has a relatively stable position and is equipped with a good education in a growing field. In the last three years, he has earned an annual salary in excess of $70,000.00. While Gross testified that Maria Gross's income and employment prospects are limited by her lack of higher education, she has taken college courses and currently is working only one or two days a week. Thus, it seems likely that she will be able to increase her income in the future. Debtors'

7

are eligible for adjustment of their debts under chapter 13. Neither their secured nor their unsecured debts exceed the statutory limits set by 11 U.S.C. §109(e). At a minimum, Debtors should be able to fund a Chapter 13 plan by eliminating the contributions to Gross' 401(k) plan and terminating the gifts to Maria Gross's mother. These amounts alone suggest that Debtors could contribute $475.00 per month to a Chapter 13 plan, which would enable them to pay $17,100.00 toward their unsecured debt of $41,796.65, or 41%.

### Conclusion

Application of the totality of the circumstances factors weigh in favor of dismissing Debtors' petition. However, as an alternative to dismissal, Debtors are encouraged to convert their case to one in Chapter 13, where they can propose repayment of at least a portion of their debts. Therefore, the Motion to dismiss is hereby granted, but dismissal of the case shall be delayed for ten days to allow Debtors the opportunity to convert their case to Chapter 13.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: October 13, 2005

*This electronic opinion is signed and filed on the same date.*

8